**H. Erskine CHERRY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A04–0109–CR–417.**

Court of Appeals of Indiana.

July 10, 2002.

Angela Warner Sims, Hulse Lacey Hardacre Austin & Shine, P.C., Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant H. Erskine Cherry ("Cherry") appeals his sentence for his convictions for one count of Class C felony theft,[1] two counts of Class D felony theft, and one count of Class C felony corrupt business influence.[2] We affirm in part and vacate in part.

### Issues

Cherry raises four issues for our review, which we restate and reorder as follows:

I.  whether the trial court abused its discretion by failing to find Cherry's guilty plea as a mitigating factor;

II. whether the trial court abused its discretion by failing to accord Cherry's lack of criminal record sufficient weight as a mitigating factor;

III. whether Cherry's fourteen-year sentence is manifestly unreasonable; and

IV. whether the trial court abused its discretion in calculating Cherry's restitution.

### Facts and Procedural History

Cherry was admitted to the Indiana bar in 1971. On October 21, 1997, he received $120,241.79 from client Janice Schulte ("Schulte"). Cherry told Schulte that he would invest this money in a nonexistent company called "Dajan Inc." and promised Schulte that her investment would return 1.25% per month, or 15% per annum. Instead, Cherry used the money to pay business bills. On March 18, 1998, and June 4, 1998, Schulte gave Cherry checks for $10,000.00 and $5000.00, respectively, thinking that Cherry would deposit them in a trust fund for her son. Instead, Cherry cashed these checks and applied the proceeds toward a business venture.

The State charged Cherry with one count of Class C felony theft, two counts of Class D felony theft, and one count of Class C felony corrupt business influence. On July 9, 2001, Cherry pled guilty to all four counts. On August 29, 2001, the trial court sentenced Cherry as follows:

[Cherry's counsel has] articulated every possible mitigating circumstance and most of them I don't think are applicable. They could be but I don't know that there is evidence that would justify my finding them to be mitigators. There is in fact a mitigating factor that Mr. Cherry has had a long distinguished period of productive work life. I know of my own knowledge that he served honorabl[y] in the military. And I believe he did and he was honorably discharged. That is a mitigator. He was

---

1. Ind.Code § 35–43–4–2.

2. Ind.Code § 35–45–6–2.

[an] elected public servant and while not everybody will agree with some of his decisions, he generally acquitted himself well. He has no prior criminal history.... [T]he aggravators are that he [h]as a repeated pattern of theft of funds entrusted to him for good and worthy purposes. And he violated the most sacred trust that there can be.... I clearly feel that the aggravating circumstances outweigh the mitigators.

. . . .

Alright, [Cherry] plead guilty to theft as a C in count I, he is sentenced to the Indiana Department of Corrections for a period of eight (8) years. He plead guilty to theft [as] a D in Count II, he is sentenced to the Indiana Department of Corrections for a period of ... [t]hree (3) years. And on Count III, he is sentenced to the Indiana Department of Corrections for theft, three (3) years. All sentences to run consecutively for a total of fourteen (14) years. Count IV, Corrupt Business Influence, he is sentenced to the Indiana Department of Corrections for a period of eight (8) years. Count IV is to run concurrently with Counts I, II and III. Restitution in the amount of two hundred and twelve thousand dollars ($212,000.00) is ordered repaid. There is no fine. He is ordered to pay the costs. [T]here is [a] nine hundred fifty dollars ($950.00) cash bond. I would like to order that paid over to Mrs. Schulte today.

Appellant's App. at 25, 27–28.

The trial court apparently based its restitution order on the $222,527.56 that Schulte requested in her victim impact statement minus $10,000.00 in payments that Cherry had made to Schulte prior to sentencing. On September 25, 2001, Cherry asked the trial court to recalculate its restitution order. After a hearing on January 14, 2002, the trial court credited Cherry for the $950.00 bond and entered judgment on restitution of $211,050.00. Cherry now appeals.

### Discussion and Decision

#### I. Guilty Plea

■ Cherry contends that the trial court erred when it failed to find his guilty plea as a mitigating circumstance. Trial courts are granted broad discretion in imposing sentences, including the consideration of aggravators and mitigators, and we will reverse a sentencing decision only for an abuse of that discretion. *See Davies v. State*, 730 N.E.2d 726, 741 (Ind.Ct. App.2000), *trans. denied.*

■ When enhancing a sentence, the trial court must set forth a statement of its reasons for selecting a particular punishment. *See id.* Specifically, the court must (1) identify all significant aggravating and mitigating circumstances, (2) explain why each circumstance is considered aggravating or mitigating, and (3) show that it evaluated and balanced the circumstances. *See Payne v. State*, 687 N.E.2d 252, 255 (Ind.Ct.App.1997). "At least one aggravating factor is required to impose an enhanced or consecutive sentence, and the same factor may both enhance a presumptive sentence and justify consecutive sentences." *Miller v. State*, 716 N.E.2d 367, 371 (Ind.1999) (citation omitted). "Finding the existence of mitigating circumstances is within the discretion of the trial court." *Beason v. State*, 690 N.E.2d 277, 283 (Ind. 1998). Furthermore, "[t]he sentencing court is not required to place the same value on a mitigating circumstance as does the defendant." *Id.* at 283–84.

"Indiana courts have recognized that a guilty plea is a significant mitigating circumstance in some circumstances." *Trueblood v. State*, 715 N.E.2d 1242, 1257 (Ind. 1999). "Nevertheless, this determination is necessarily fact sensitive, and not every

plea of guilty is a significant mitigating circumstance that must be credited by a trial court." [3] *Id.* Cherry argues that the trial court should have found his guilty plea as a mitigating circumstance because it saved the State the time and expense of preparing a case and conducting a trial; because it spared Schulte the stress of a trial; and because it showed his acceptance of responsibility for his crimes. *See* Appellant's Br. at 9.

Indiana courts have often addressed these three considerations in determining whether a trial court should have found a guilty plea to be a mitigating circumstance. One recent case contains the following analysis:

> While a guilty plea is not enough to prove remorse, it can show an acceptance of responsibility for one's actions. Certainly, the plea saves court time and spares the victim's family the trauma of a trial. Where the State reaps a substantial benefit from the defendant's act of pleading guilty, the defendant deserves to have a substantial benefit returned.

> As for a guilty plea showing acceptance of responsibility, the court in *Scheckel* [*v. State*, 655 N.E.2d 506, 511 (Ind.1995),] considered this circumstance as at least "partially confirm[ing] the mitigating evidence regarding ... character."

*Sensback v. State*, 720 N.E.2d 1160, 1164–65 (Ind.1999) (some citations omitted, ellipsis in *Sensback*).

Based on the record before us, we are not convinced that Cherry deserves a substantial benefit in return for pleading guilty. First, it does not appear that Cherry's trial would have been very costly in either time or resources. Second, although Schulte was spared the "added stress of a trial[,]" Appellant's Br. at 9, we do not believe that Schulte's stress would have been significant. Finally, although Cherry claims that he "accepted responsibility upon his first contact with law enforcement[,]" *id.,* he fails to mention that, when confronted by Schulte's counsel *prior* to police involvement, he wrote Schulte two $5000.00 checks that were returned for insufficient funds. In conclusion, we cannot say that the trial court abused its discretion in not finding Cherry's guilty plea to be a mitigating circumstance.

## II. Lack of Criminal Record

■ Cherry contends that "although the trial court identified his lack of criminal history as a mitigating factor, the trial court failed to give any weight to this factor" and "could not have given [Cherry's] lack of criminal record any weight whatsoever." Appellant's Br. at 7. Cherry cites *Loveless v. State*, 642 N.E.2d 974, 976 (Ind.1994), for the proposition that a lack of criminal record is a factor that deserves "substantial mitigating weight."

---

3. A panel of this court has held that "the trial court *is compelled to find* that pleading guilty is a valid mitigator." *Madden v. State*, 697 N.E.2d 964, 969 (Ind.Ct.App.1998) (emphasis added), *trans. denied.* The *Madden* court cited *Singer v. State*, 674 N.E.2d 11, 18 (Ind.Ct. App.1996), for this proposition. However, *Singer* does not compel a trial court to consider a guilty plea as a mitigating circumstance; it merely recognizes that a trial court *may* consider a guilty plea as a mitigating circumstance. *See id.* ("We also recognize that pleading guilty *may be considered* as a valid mitigating circumstance.") (emphasis added). The *Singer* court also opined (correctly, in our view) that "[i]f a reviewing court were to place too much emphasis on a guilty plea as a mitigator, then defendants who exercised their constitutional rights to jury trials would be precluded from benefiting from such a mitigator, and therefore, would indirectly be punished for exercising a constitutional right." *Id.*

As mitigators, the trial court found that Cherry had a "long distinguished period of productive work life[,] that he served honorabl[y] in the military[, that he was an] elected public servant [who] generally acquitted himself well[, and that he had] no prior criminal history." Appellant's App. at 25. As aggravators, the trial court cited Cherry's "repeated pattern of theft of funds entrusted to him for good and worthy purposes" and his "violat[ion of] the most sacred trust that there can be[.]" *Id.* at 26.

There is no indication that the trial court failed to give Cherry's lack of criminal record the substantial mitigating weight that it deserved. The trial court found that the aggravators outweighed the mitigators, and although it did not indicate the relative weight it assigned to each mitigator or aggravator, it was under no obligation to do so. *Cf. Hollen v. State,* 761 N.E.2d 398, 401 (Ind.2002) ("To the extent that the State requests that we confirm that a trial court judge is not obligated to assign to each aggravating circumstance a specific proportional weight, we do so."). The two aggravators the trial court found in the instant case, particularly the violation of a client's trust by an attorney, are serious and deserve to be accorded substantial weight. In the absence of a clear ·indication that the trial court failed to accord Cherry's lack of criminal record substantial mitigating weight, and in light of the serious aggravators found by the trial court, we cannot conclude that the trial court abused its discretion.

### III. Manifestly Unreasonable Sentence

■ Cherry further contends that his fourteen-year sentence is manifestly unreasonable. "We will not revise a sentence that is authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. As our appellate courts have stated numerous times, the issue is not whether in our judgment the sentence is unreasonable, but whether it is 'clearly, plainly, and obviously so.'" *Louallen v. State,* 755 N.E.2d 672, 678 (Ind.Ct.App.2001) (quoting Ind. Appellate Rule 17(B), now App. R. 7(B)).

Cherry was an attorney in a fiduciary relationship with Schulte, a childhood friend who was in poor health. As the trial court noted, Cherry "violated the most sacred trust that there can be" by stealing Schulte's life savings, which she needed for medical expenses and to establish a trust fund for her son. *See* Appellant's App. at 20. Given the nature of the offenses and Cherry's character, we cannot conclude that his fourteen-year sentence is clearly, plainly, and obviously unreasonable.

### IV. Restitution

■ Cherry contends that the trial court's $211,050.00 restitution order is an abuse of discretion. He argues that a trial court is not authorized to include pre-sentence interest in a restitution order, and, in the alternative, that a trial court should be limited to ordering pre-sentence interest no greater than that allowed by the civil prejudgment interest statute. *See* Ind.Code § 34–51–4–9 ("The court shall compute the prejudgment interest at the simple rate of interest determined by the court. The rate set by the court may not be less than six percent (6%) per year and not more than ten percent (10%) per year.").

As mentioned above, the trial court apparently based its restitution order on the restitution Schulte requested in her victim impact statement minus payments Cherry made to Schulte prior to sentencing:

| Debit | Credit | How calculated |
|---|---|---|
| $209,966.10 | | $120,241.70 [4] plus 1.25% monthly interest [5] from October 27, 1997, to sentencing on August 29, 2001 |
| $ 13,600.00 | | $10,000.00 plus 8% annual interest [6] from March 1998 to sentencing |
| $  6,800.00 | | $5000.00 plus 8% annual interest from June 1998 to sentencing |
| $    500.00 | | fee for two insufficient-funds checks written by Cherry to Schulte |
| | $ 8,338.54 | credit to Cherry for amount received from condominium foreclosure that he handled for Schulte |
| | | restitution Schulte requested = $222,527.56 (the trial court used $222,000.00 as gross restitution) |
| | $    950.00 | bond surrendered to Schulte |
| | $10,000.00 | payments from Cherry to Schulte |
| | | net restitution = $211,050.00 |

■ Indiana Code Section 35–50–5–3 governs restitution orders and provides in relevant part that

[t]he court may order the person convicted of an offense under IC 35–43–9 [e.g., theft] to make restitution to the victim of the crime. The court shall base its restitution order upon a consideration of the amount of money that the convicted person converted, misappropriated, or received, or for which the convicted person conspired.

"An order of restitution is within the trial court's discretion and will be reversed only upon finding an abuse of discretion." *Kellett v. State,* 716 N.E.2d 975, 980 (Ind.Ct. App.1999). "The purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victim caused by the offense." *Carswell v. State,* 721 N.E.2d 1255, 1259 (Ind.Ct.App. 1999).

Neither party has directed us to an Indiana case that addresses the issue of pre-sentence interest with respect to criminal restitution orders, and we have been unable to find one. Although the State has directed us to a number of foreign decisions addressing the issue, we conclude that we need not venture outside Indiana law to address this question of first impression.

■ We note initially that "an order of restitution is as much a part of a criminal sentence as a fine or other penalty." *Creager v. State,* 737 N.E.2d 771, 779 (Ind. Ct.App.2000), *trans. denied* (2001). Because restitution is penal in nature, the restitution statute must be "strictly construed against the State to avoid enlarging [it] by intendment or implication beyond the fair meaning of the language used." *State v. Shelton,* 692 N.E.2d 947, 949 (Ind. Ct.App.1998). Because Indiana Code Section 35–50–5–3 does not specifically authorize a trial court to include pre-sentence

**4.** The amount of this check appears variously in the record as $120,241.79 and $120,241.70. Schulte used the latter amount in her calculations.

**5.** This is the rate of return that Cherry promised Schulte on her investment in Dajan Inc.

**6.** The record does not indicate why Schulte requested 8% interest on the $10,000.00 and $5000.00 checks.

interest in a restitution order, we conclude that a trial court may not do so.

Neither does Indiana Code Section 35–50–5–3 authorize as restitution the $500.00 "fee" for insufficient-funds checks written by Cherry to Schulte or the $8,338.54 credit to Cherry for services rendered to Schulte on an unrelated matter. We note that neither party challenges the inclusion of either amount in the trial court's restitution calculations. However, a restitution order is part of the sentence, and "[i]t is the duty of the appellate courts to bring illegal sentences into compliance[.]" *Golden v. State*, 553 N.E.2d 1219, 1223–24 (Ind. Ct.App.1990), *trans. denied* (citation and quotation marks omitted). There is no statutory basis for the inclusion of the insufficient-funds fee in the restitution calculations, and the credit plainly has nothing to do with Cherry's thefts.[7] The trial court abused its discretion by including these amounts in its restitution calculations.

We recalculate Cherry's restitution as follows:

| Debit | Credit | How calculated |
| --- | --- | --- |
| $120,241.70 | | amount Cherry received from Schulte in October 1997 |
| $ 10,000.00 | | amount Cherry received from Schulte in March 1998 |
| $ 5,000.00 | | amount Cherry received from Schulte in June 1998 |
| | | Gross restitution = $135,241.70 |
| | $ 950.00 | bond surrendered to Schulte |
| | $10,000.00 | payments from Cherry to Schulte |
| | | net restitution = $124,291.70 |

In conclusion, we affirm Cherry's sentence and vacate the trial court's order of restitution. Pursuant to Indiana Appellate Rule 66(C)(10),[8] we enter a restitution order for $124,291.70.

Affirmed in part and vacated in part.

SHARPNACK and FRIEDLANDER, JJ., concur.

---

7. Cherry apparently attempted to begin repaying Schulte the money he took from her, but the checks he wrote to Schulte were returned for insufficient funds. We note that if the restitution order does not fully compensate Schulte for her loss, including any loss she sustained because of the insufficient-funds checks, she may still pursue a civil action against Cherry. Indiana Code Section 35–50–5–3(e) provides that "[a]n order of restitution under subsection (a) or (i) does not bar a civil action for ... damages that the court did not require the person to pay to the victim under the restitution order but arise from an injury or property damage that is the basis of restitution ordered by the court [or] other damages suffered by the victim."

8. Indiana Appellate Rule 66 provides in relevant part that "[t]he Court may, with respect to some or all of the parties or issues, in whole or in part ... grant any other appropriate relief."