**Joshua MARTIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 70A05–0202–CR–94.**

Court of Appeals of Indiana.

March 12, 2003.

**1000**

Jeffrey A. Baldwin, Baldwin & Dakich, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys For Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Joshua Martin appeals his conviction of Battery as a Class C felony for beating a man to death. Specifically, he contends that the State failed to rebut his claim of self-defense. He also contends that the

trial court erred in admitting into evidence eight photographs depicting the victim's injuries because they were irrelevant, unduly prejudicial, and cumulative. In addition, he contends that the trial court erred in denying his Motion to Correct Error on grounds that the State charged the victim's fiancée with perjury and false informing after the trial and sentencing in this case. Lastly, Joshua contends that the trial court erred in sentencing him to the maximum term of eight years, that his sentence is manifestly unreasonable, and that it was error for the trial court to order him to pay restitution to the victim's family for the victim's funeral expenses.

Because the force Joshua used was not proportionate to the requirements or urgency of the situation, we conclude that the State met its burden of negating at least one of the elements of self-defense. Further, because the issue at trial was whether Joshua used excessive force and the photographs, which differed from each other, depicted the nature and extent of the victim's injuries, the photographs were relevant and neither unduly prejudicial nor cumulative. The trial court properly denied Joshua's Motion to Correct Error because Joshua failed to prove that the result of the trial would have been any different as the jury was already aware of the facts underlying the charges. Because the trial court properly found six aggravators and concluded that they outweighed the four mitigators, we determine that the trial court did not err in sentencing Joshua to the maximum term. Joshua's eight-year sentence for battery is not inappropriate because Joshua, who had a history of criminal and delinquent activity as well as arrests, brutally beat a man causing his death. Lastly, because the victim's family suffered financial loss as a direct and immediate result of the battery, the trial court did not err in ordering Joshua to pay restitution.

## Facts and Procedural History

Leslie Ficklin was a server at Martin's Triangle in Rushville, Indiana. On February 28, 2001, Ficklin waited on Joshua, Joshua's father Steve Martin, and some of their friends (the Martin party). Although the restaurant had closed for the evening, Connie Martin, the owner of the restaurant and sister to Steve, asked Ficklin to stay late and finish waiting on them. While Ficklin waited on the Martin party, her fiancée Derrick Walker waited in the bar area.

Around 10:30 p.m., one and a half hours after Ficklin's shift was supposed to end, Ficklin presented the Martin party with its check. Steve paid the bill and left a ten-dollar tip. As Ficklin and Walker were leaving the restaurant, several members of the Martin party were congregating in the entry way. On their way out the door, Steve said, "See you later, freak." Tr. p. 144. Walker stopped, but Ficklin pulled him out the door and told him that it was not worth it. Nevertheless, Walker went back inside the restaurant.

When Walker entered the restaurant, he grabbed Steve around the neck and pushed him up against the wall. Steve then punched Walker in the head and told Walker to get off him. As Steve and Walker struggled, Joel Bouslog, a member of the Martin party, unsuccessfully attempted to separate them. As a result, Joshua ran over to Steve and Walker and told Walker not to touch his father again. After pushing his father out of the way, Joshua punched Walker twice in the face and pushed him down to the ground. Joshua then straddled Walker, who was lying on his back, and put his hands on Walker's upper chest and lower neck. As Walker swung up and grabbed at Joshua, Joshua punched him in the face at least three times. At this point, Joshua Cooper,

another member of the Martin party, tugged on Joshua's sweater in an effort to get him to stop, but Joshua did not acknowledge him. As Cooper left the restaurant, Joshua was still straddling Walker.

Ficklin stayed outside when Walker went back inside the restaurant. However, upon hearing a lot of noise, she decided to go back inside. Upon entering, Ficklin saw a lot of people cheering and Joshua straddling Walker on the ground. According to Ficklin, Joshua was "repeatedly" punching Walker. Tr. p. 149. Eventually, Joshua got up and left the restaurant. Ficklin called police, and officers arrived minutes later. Emergency medical technicians also arrived, but Walker refused medical treatment at that time. However, shortly thereafter Ficklin took Walker to the emergency room at Rush Memorial Hospital.

When Walker arrived at the emergency room around 11:15 p.m., the emergency room physician observed that Walker had a swollen face, black eyes, his nose was bleeding and appeared broken, his upper teeth were loose, and the bones in his right cheekbone were grinding against each other. The doctor then ordered X-rays and a CAT scan, which revealed multiple fractures to Walker's facial bones and sinuses. Concerned about potential damage to Walker's brain and spinal cord and because Walker's condition had significantly worsened, the doctor summoned Lifeline Helicopter from Methodist Hospital in Indianapolis. Dr. Larry Stevens from Methodist Hospital examined Walker at 1:59 a.m. on March 1, at which time Dr. Stevens pronounced him dead. Dr. Donna Smith and Dr. Dean Hawley performed an autopsy on Walker on March 2. They con-

cluded that the cause of death was "[a]sphyxia with fracture of hyoid bone [d]ue to: blunt force injury of head and neck." Exhibit 22.

The State subsequently charged Joshua with Murder [1] and Aggravated Battery, a Class B felony.[2] Following his 2001 jury trial, Joshua was convicted of Battery, a Class C felony,[3] as a lesser-included offense of aggravated battery. Following a sentencing hearing, the trial court sentenced Joshua to the maximum term of eight years. The trial court also ordered Joshua to pay Walker's funeral expenses. Joshua subsequently filed a Motion to Correct Error, which the trial court denied. This appeal ensued.

### Discussion and Decision

Joshua raises six issues on appeal. First, he contends that the State failed to rebut his claim of self-defense. Second, he contends that the trial court erred in admitting into evidence eight photographs of Walker depicting his injuries. Third, he contends that the trial court erred in denying his Motion to Correct Error. Fourth, he contends that the trial court erred in sentencing him to the maximum term of eight years by considering improper aggravators and by not assessing enough weight to the mitigators. Fifth, he contends that his eight-year sentence is manifestly unreasonable. Lastly, he contends that the trial court erred in ordering him to pay Walker's funeral expenses. We address each issue in turn.

### I. Self-defense

■ Joshua contends that the State failed to rebut his claim of self-defense. A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. *Wilson v. State*, 770

1. Ind.Code § 35–42–1–1(1).

2. Ind.Code § 35–42–2–1.5.

3. Ind.Code § 35–42–2–1(a)(3).

N.E.2d 799, 800 (Ind.2002). When reviewing a question of whether the State negated the defendant's claim of self-defense beyond a reasonable doubt, our standard is the same as in any other challenge to the sufficiency of the evidence. *Hollowell v. State,* 707 N.E.2d 1014, 1021 (Ind.Ct.App. 1999). We neither reweigh the evidence nor determine the credibility of the witnesses. *Whitney v. State,* 726 N.E.2d 823, 825 (Ind.Ct.App.2000). We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A defendant's conviction, despite a claim of self-defense, will not be reversed unless no reasonable person can say that the State negated the claim beyond a reasonable doubt. *Hollowell,* 707 N.E.2d at 1021.

██ Indiana Code § 35–41–3–2(a), which governs the use of force to protect a person, provides in pertinent part:

> A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony.

In order to prevail on a claim of self-defense, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson,* 770 N.E.2d at 800. When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.*

██ The State does not dispute that Walker initiated the attack upon Steve and that Joshua had the right to come to his father's aid. Instead, the State argues that "the amount of force used by [Joshua] was unreasonable and in excess of that needed for the protection of Steve[.]" Appellee's Br. p. 6. Joshua counters that he "responded to Walker's aggression with reasonable force." Appellant's Reply Br. p. 2. The amount of force that is reasonably necessary to defend oneself or another person is determined from the standpoint of the defendant in light of the surrounding circumstances. *Geralds v. State,* 647 N.E.2d 369, 373 (Ind.Ct.App. 1995), *trans. denied.* However, the force used must be proportionate to the requirements or urgency of the situation. *Hollowell,* 707 N.E.2d at 1021; *Geralds,* 647 N.E.2d at 373; *see also Morrison v. State,* 613 N.E.2d 865, 868 (Ind.Ct.App. 1993) ("[I]n all self-defense claims, the force employed must not be out of proportion to the apparent urgency of the situation."), *trans. denied.* " 'Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator.' " *Hollowell,* 707 N.E.2d at 1021 (quoting *Geralds,* 647 N.E.2d at 373). In determining whether the degree of force that the defendant exerted exceeded the bounds justified to defend himself or a third person, the extent and severity of the victim's injuries are relevant. *See Morrison,* 613 N.E.2d at 868.

Here, the evidence shows that Joshua approached Walker and Steve as they were fighting and pushed his father out of the way. According to Steve, Joshua then "hit [Walker] and he took him and he put him on the floor." Tr. p. 426. When asked if he saw Walker hit Joshua, Steve responded "No[.]" Tr. p. 426. Once Joshua had Walker on the floor, Joshua straddled him. Steve testified that at this

point, Joshua was "controlling" Walker. Tr. p. 427. As Walker began to swing up and grab at Joshua, Joshua punched him in the face at least three times. Joshua then got up and left the restaurant. As for injuries to Steve and Joshua, Todd Cudworth, another member of the Martin party, testified that after they left the restaurant, he did not see any blood on Joshua and nothing but a scratch on Steve's knuckle. As for injuries to Walker, the autopsy revealed the following:

a. approximately square patterned abrasions of right forehead

b. linear contusions of mid and left forehead

c. several areas of subgaleal hemorrhage underlying contusions and abrasions and with right and left temporalis muscles

d. abrasion on bridge of nose and pinna of left ear

e. bilateral contusions around eyes

f. contusions inside lips

g. fractures of nasal and facial bones

h. fracture of the left hyoid bone

i. moderate ingestion and slight aspiration of blood

Exhibit 22. In light of the surrounding circumstances, including the injuries to Walker, we cannot conclude that the force Joshua used was proportionate to the requirements or urgency of the situation. The State has met its burden of negating at least one of the elements of self-defense beyond a reasonable doubt.

## II. Photographs of Victim

■■■ Joshua contends that the trial court erred in admitting into evidence State's Exhibits 3–10, which are eight photographs of Walker taken approximately eight hours after his death in the Marion County Coroner's Office. Specifically, Joshua argues that there was an inade-

quate foundation for the photographs and that the photographs were not relevant, unduly prejudicial, and cumulative. We review a trial court's admission of photographic evidence for an abuse of discretion. *Hulfachor v. State,* 735 N.E.2d 214, 217 (Ind.2000).

■■■ · Joshua first argues that there was an inadequate foundation for the photographs because the State failed to prove that they were a true and accurate representation of Walker. In authenticating a photograph, a witness must establish that the photograph is a true and accurate representation of what it is meant to portray. *Cohen v. State,* 714 N.E.2d 1168, 1175 (Ind. Ct.App.1999), *trans. denied.* Here, the State admitted the photographs to show the nature and extent of Walker's injuries. Dr. Pafford testified that with the exception of some "[s]lightly increased bruising around the eyes and perhaps a little bit more swelling over the cheeks," the photographs accurately depicted Walker the last time he saw him at Rush Memorial Hospital. Tr. p. 474–75. Furthermore, Timothy Williams of the Rushville Police Department, who took the photographs of Walker at the Marion County Coroner's Office, testified that they "accurately depict[ed] [Derrick] Walker" on March 1, 2001, around 10:00 a.m. Tr. p. 189. Nevertheless, Joshua asserts that the foundation is still improper because "[n]o evidence was presented by the State of Indiana as to what, if anything, happened to Walker between the time Walker left Dr. Pafford's care, and the time Williams saw Walker and took the Photographs." Appellant's Br. p. 11. However, this goes to the weight, and not the admissibility, of the photographs. *See Russell v. State,* 519 N.E.2d 549, 553–54 (Ind.1988). The foundation was proper.

■■■ Joshua next argues that the photographs were not relevant, unduly preju-

dicial, and cumulative. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Photographs that depict a victim's injuries are generally relevant and thus admissible. *Hulfachor*, 735 N.E.2d at 217. Here, the photographs, which depict the nature and extent of Walker's injuries, are relevant in that the key issue at trial was whether Joshua used excessive force in defending his father. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ... or needless presentation of cumulative evidence." Ind. Evidence Rule 403.

 Joshua asserts that the probative value of the photographs was "*de minimus*" because "[t]here was no dispute that Walker *died*" and that the prejudicial effect was "extremely high" because the photographs showed "severe swelling, blood all over his face, an intubation tube in his mouth, and C-spine collar around his neck[.]" Appellant's Br. p. 13. "That photographs depict gory, revolting, or inflammatory details of the crime is not sufficient basis for reversal, unless they are without relevance to any material issue." *Hulfachor*, 735 N.E.2d at 217 (quotation omitted). "Proving the material issues cannot be done sometimes without presenting disagreeable evidence. Revolting crimes generate revolting evidence." *Id.* (quotation omitted). Here, the photographs were indeed prejudicial. However, we note that the photographs, which were taken a day before the autopsy, do not depict Walker's body in an altered condition. *See Kilpatrick v. State*, 746 N.E.2d 52, 56 (Ind.2001) ("As for alleged prejudicial impact, we do not agree the photograph is particularly gruesome. Indeed, because the photo-

graph was taken before the pathologist actually began his internal examination, it shows no incisions and does not portray the gruesome spectacle this Court has previously condemned."). The probative value of the photographs is strong because the key issue at trial was whether Joshua used excessive force in defending his father. We cannot conclude that the probative value of the photographs is substantially outweighed by the danger of unfair prejudice.

 Joshua further asserts that State's Exhibits 4, 7, 9, and 10 "were nearly identical to" State's Exhibits 3, 5, 6, and 8 and thus were cumulative. Appellant's Br. p. 13. Photographs depicting a victim's injuries are generally admissible and will not be rejected merely because they are cumulative. *Duncan v. State*, 735 N.E.2d 211, 213 (Ind.2000). Rather, a defendant must show that unfair prejudice flowing from the evidence outweighs its probative value. *Id.* Four photographs are at issue here; two of them show Walker's injuries with a different exposure/color; one of them shows Walker's injuries with a different exposure/color, angle, and closeness; and the last one shows Walker's injuries with a different angle and closeness. Thus, they are not wholly cumulative. *See id.* at 214. As noted above, these photographs are particularly probative inasmuch as the key issue at trial was whether Joshua used excessive force in defending his father. We cannot conclude that unfair prejudice flowing from the photographs outweighs its probative value. Therefore, the trial court did not abuse its discretion in admitting State's Exhibits 3–10 into evidence.

### III. Motion to Correct Error

 Joshua contends that the trial court erred in denying his Motion to Correct Error. The basis of this motion was

that the State, on the day after Joshua's sentencing, filed charges against Ficklin for Perjury, a Class D felony, and False Informing, a Class A misdemeanor, for false statements that she made to Rushville police. Specifically, Ficklin told police on March 1, 2001, that two people held Walker while Joshua punched him. However, Ficklin testified in her August 6, 2001, deposition and at trial that she did not see anyone else touch Walker and that no one else held him down. Joshua argues that by filing charges against Ficklin after his sentencing, the State suppressed material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In the alternative, Joshua argues that the filing of charges constitutes newly discovered evidence entitling him to a new trial. When ruling on a motion to correct error, the trial court sits as the initial fact finder on the issues raised, and we review the trial court's determination for an abuse of discretion. *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002).

### A. *Brady v. Maryland Violation*

Joshua first argues that the State suppressed material exculpatory evidence in violation of *Brady v. Maryland*. In *Brady*, the United States Supreme Court held, "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. This holding applies to evidence impeaching the credibility of a State's witness. *Ben–Yisrayl v. State*, 753 N.E.2d 649, 657 (Ind.2001), *reh'g denied*, *cert. denied*, 536 U.S. 918, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation omitted).

We first observe that nothing was suppressed. At the time of Joshua's trial and sentencing, Ficklin had not been charged with any crime. Moreover, Joshua concedes that he was aware of the facts underlying the charges before trial. In fact, Ficklin testified on direct examination about her inconsistent statements regarding how many people were involved in the beating of Walker, and defense counsel cross-examined her about these "lies." Tr. p. 156–57. Although the jury was not aware of the charges because the State did not file them against Ficklin until after Joshua's trial and sentencing, the jury was aware that Ficklin had made false statements to police, which was the basis for the eventual charges. Accordingly, there is no reasonable probability that the result of the trial would have been different had the State charged Ficklin earlier and the jury been aware of it.

### B. *Newly Discovered Evidence*

Joshua next argues that the State's filing of charges against Ficklin on the day after his sentencing constitutes newly discovered evidence entitling him to a new trial. To obtain a new trial based on newly discovered evidence, a party must establish the following requirements: (1) the evidence was not available at trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result. *Godby v. State*, 736 N.E.2d 252, 258 (Ind.2000), *reh'g denied*. The moving party bears the burden

of showing that the newly discovered evidence meets all nine requirements. *Id.*

Here, Joshua has failed to prove at least one of the requirements, that the evidence will probably produce a different result. Our supreme court has called this "the final and critical ninth factor[.]" *Reed v. State*, 702 N.E.2d 685, 691 (Ind.1998). "[T]he defendant must raise a strong presumption that the result at any subsequent trial in all probability would be different." *Id.* In ruling on whether the evidence would produce a different result, the trial court may properly consider the weight that a reasonable trier of fact would give it and while so doing may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case. *Id.* As discussed above, the jury was aware of the facts underlying the charges against Ficklin as both the State and defense counsel questioned Ficklin about her inconsistent statements. Joshua has failed to raise a strong presumption that the result at any subsequent trial in all probability would be different. The trial court did not abuse its discretion in denying Joshua's Motion to Correct Error.

### IV. *Aggravators and Mitigators*

Joshua contends that the trial court erred in sentencing him to the maximum term of eight years by considering improper aggravators and by not assessing enough weight to the mitigators. Generally, sentencing determinations are within a trial court's discretion and are governed by Indiana Code § 35-38-1-7.1. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind.2002). This Court will review a trial court's sentencing decision only for an abuse of discretion, including the trial court's decision to increase or decrease the presumptive sentence because of aggravating or mitigating factors. *Id.* If the trial court relies upon aggravating or mitigating factors to enhance or reduce a presumptive sentence, it must: (1) identify all significant mitigating and aggravating factors; (2) state the specific reason why each factor is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the factors. *Id.*

Here, the trial court identified the following aggravating circumstances in its sentencing order: (1) the nature and circumstances of the crime; (2) history of criminal and delinquent activity; (3) Joshua had prior arrests that did not result in convictions; (4) Joshua is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; (5) Joshua's extensive experience in contact sports; (6) Joshua's lack of remorse; and (7) the risk that Joshua will commit another crime. Appellant's App. p. 313–14. The trial court also identified the following mitigating circumstances: (1) the victim of the crime initiated the incident; (2) Joshua acted partly in defense of another; (3) Joshua acted under strong provocation; and (4) Joshua is devoted to his family and other persons and donates time to youth contact sports in which young people regard him as a role model. Appellant's App. p. 314–15. Finding that the "very strong" aggravators outweighed the "much weaker" mitigators, the trial court sentenced Joshua to the maximum term of eight years. Appellant's App. p. 315.

### A. *Aggravators*

Joshua first argues that the trial court improperly relied on the nature and circumstances of the crime as an aggravator. In finding this to be an aggravator, the trial court explained that the crime was "extremely brutal" and involved "striking the Victim in the head area a number of times with great force." Appellant's App. p. 313. Joshua asserts that

battery resulting in serious bodily injury, of which he was convicted, is an inherently violent crime and therefore the fact that the battery was "extremely brutal" cannot be used as an aggravating circumstance. Joshua is correct that a factor constituting a material element of an offense cannot be used as an aggravating circumstance. *See* *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind.2001). However, extreme brutality is not an element of the crime of battery resulting in serious bodily injury. Furthermore, serious bodily injury can result when the battery is not "extremely brutal." Therefore, the trial court did not err in relying on the nature and circumstances of the crime as an aggravator.

 Joshua next argues that the trial court improperly relied on his history of criminal and delinquent activity as an aggravator. In support of this aggravator, the trial court noted the following: "[Joshua] was adjudicated as a delinquent for Minor in Possession of Alcohol in 1995 and Theft in 1996. He was convicted as an adult for Illegal Consumption [in] 1998 and Littering [in] 1999." Appellant's App. p. 313. Joshua asserts that it was improper for the trial court to consider littering because it was an ordinance violation, not a crime. Although the trial court should not have relied on Joshua's violation of the littering ordinance, it properly considered three other adjudications and convictions, none of which Joshua challenges. The trial court did not err in relying on Joshua's history of criminal and delinquent activity as an aggravator.

 Joshua also argues that the trial court erred in considering his arrests for battery resulting in bodily injury and minor in possession of alcohol as an aggravator because they did not result in convictions. In support of this aggravator, the trial court observed:

[Joshua] also was arrested in 1999 for Battery Resulting in Bodily Injury and in 2000 for Minor in Possession of Alcohol. These have not resulted in convictions. The Court considers them because the current criminal behavior was not deterred even after the Defendant was subject to the police authority of the State in these instances.

Appellant's Br. p. 313–14. One or more arrests, standing alone, do not establish the history of criminal or delinquent activity aggravator to enhance a sentence. *Pickens v. State*, 767 N.E.2d 530, 534 (Ind. 2002). However, although a record of arrests does not establish the historical fact of prior criminal behavior, "such a record does reveal to the court that subsequent antisocial behavior on the part of the defendant has not been deterred even after having been subject to the police authority of the State and made aware of its oversight activities of its citizens." *Id.* (quotation omitted). The trial court did not err in considering Joshua's prior arrests as an aggravator.

 Joshua next argues that the trial court erred in considering his involvement in contact sports as an aggravator. In support of this aggravator, the trial court stated: "[Joshua] has had extensive experience in contact sports including wrestling and three 'Tough Man' competitions." Appellant's App. p. 314. Joshua alleges that by finding this to be an aggravator, the trial court is "attempt[ing] to maximize [his] sentence without sufficient legal basis." Appellant's Br. p. 21. Although the trial court found Joshua's involvement in contact sports to be a separate aggravator, we conclude that it fits more appropriately under the nature and circumstances of the crime aggravator. This is especially so considering that under the nature and circumstances of the crime, the trial court noted that the crime was "extremely bru-

tal" and involved "great force." Appellant's App. p. 313. Joshua's participation in these sports indicates that he knows his strength and what he is capable of. Although the trial court should not have considered Joshua's involvement in contact sports to be a separate aggravator, it properly considered it under the nature and circumstances of the crime aggravator.

 Joshua lastly argues that the trial court erred in finding as an aggravator that he is in need of correctional and rehabilitative treatment that can best be provided by commitment to a penal facility. Specifically, he asserts that the trial court failed to articulate why he is in need of such treatment beyond the presumptive term. It is true that to support this aggravator, the trial court "needs to explain why the defendant requires treatment beyond the presumptive sentence." *Bailey v. State,* 763 N.E.2d 998, 1004 (Ind.2002). However, the trial court adequately explained so here when it stated the following:

> Many prior efforts for rehabilitation have been attempted. As a juvenile, [Joshua] received informal adjustment, writing a composition, probation, restitution, suspended commitment to a secure facility. As an adult, [Joshua] was ordered to pay a fine, placed on probation, received a suspended sentence, and ordered to attend an alcohol class. These efforts at rehabilitation failed to deter the present crime.

 Appellant's App. p. 314. Therefore, the trial court did not err in finding Joshua's need of correctional and rehabilitative treatment in a penal facility as an aggravator.[4]

### B. Mitigators

 Joshua argues that the trial court erred by not assessing two of the mitigators sufficient mitigating weight. The trial court is responsible for determining the appropriate weight of aggravating and mitigating factors. *Hurt v. State,* 657 N.E.2d 112, 115 (Ind.1995); *Powell v. State,* 751 N.E.2d 311, 315 (Ind.Ct.App. 2001).

 Joshua challenges the weight given by the trial court to the mitigators that the victim commenced the incident and that Joshua acted under provocation. The trial court found that these mitigators had low weight because Joshua's actions greatly exceeded a reasonable response. *See* Appellant's App. p. 314–15. Joshua asserts that the trial court's reasoning for finding these mitigators to have low weight ignored the evidence and the jury's verdict. To the contrary, there was evidence before the jury that the force Joshua used against Walker was unreasonable in light of the surrounding circumstances. Furthermore, the jury apparently did not find that Joshua acted in self-defense, as it found him guilty of battery causing serious bodily injury. And even if the trial court erred in not assessing these two mitigators sufficient weight, Joshua has failed to prove that the trial court's conclusion would have been any different. It is well settled that only one valid aggravating circumstance is required to be found by the trial court in order to enhance a presumptive sentence. *Sherwood v. State,* 702 N.E.2d 694, 699 (Ind.1998), *reh'g denied.* Here, the trial court properly found six aggravators. Accordingly, the trial court did not abuse its discretion in sentencing

---

4. Joshua also argues that the trial court erred in considering the risk that he will commit another crime as an aggravator. However, he makes only a bare assertion and neither advances a cogent argument nor cites any authority in support thereof. Therefore, Joshua has waived this argument. Ind. Appellate Rule 46(A)(8)(a).

Joshua to the maximum term of eight years.

### V. Inappropriate Sentence

 Joshua contends that his eight-year sentence is manifestly unreasonable. Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. However, we will not do so unless the sentence imposed is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).[5] Our review under Appellate Rule 7(B) is very deferential to the trial court. See *Cruz Angeles v. State*, 751 N.E.2d 790, 800 (Ind.Ct.App.2001) (applying manifestly unreasonable standard), *trans. denied.*

 As for the nature of the offense, the presumptive sentence for the class of crimes to which the offense belongs is meant to be the starting point for the court's consideration of what sentence is appropriate for the crime committed. *Hildebrandt v. State*, 770 N.E.2d 355, 361 (Ind.Ct.App.2002), *trans. denied.* Here, Joshua was convicted of a Class C felony. The presumptive sentence for a Class C felony is four years, with the maximum sentence being eight years and the minimum sentence being two years. Ind.Code § 35–50–2–6. Hence, Joshua's eight-year sentence was the maximum lawful sentence allowed for his conviction. Although maximum lawful sentences "have historically invited appellate review and, upon occasion, revision," *Hildebrandt*, 770 N.E.2d at 360, considering the nature of the offense and the character of the offender, this is not a case that requires revision.

 As for the character of the offender, the court is guided by the general sentencing considerations under Indiana Code § 35–38–1–7.1(a), the balancing of the aggravating and mitigating factors under Indiana Code § 35–38–1–7.1(b) and (c), and the other factors left to the trial court's discretion under Indiana Code § 35–38–1–7.1(d). *Id.* at 361. Under subsection (a), the trial court considers, among other things, the nature and circumstances of the crime, the defendant's criminal history and character, and the risk that the defendant will commit another crime. Here, the nature and circumstances of the crime are that Joshua beat Walker with great force causing severe injuries and ultimately Walker's death while Joshua did not appear to have any injuries to himself. As for Joshua's criminal history and character, he had two adjudications as a juvenile and one conviction as an adult. Furthermore, he had two prior arrests, one for battery resulting in bodily injury, which the trial court found was similar to the present case. Additionally, the risk that Joshua will commit another crime is high in that he was given several opportunities at rehabilitation before committing the instant crime. Under these facts and circumstances, we cannot conclude that Joshua's eight-year sentence is inappropriate.

### VI. Funeral Expenses

 Joshua contends that the trial court erred in ordering him to pay restitution. Specifically, the trial court ordered Joshua to pay "$10,838.65 to the Walker family as reimbursement for losses which resulted f[ro]m his actions within five (5) years of release." Appellant's App. p. 316. At the sentencing hearing, the trial court explained that these losses were for "expenses for the funeral." Tr. p. 885.

**5.** This new appellate rule took effect January 1, 2003.

 An order of restitution is within the trial court's discretion and will be reversed only upon an abuse of discretion. *Kellett v. State,* 716 N.E.2d 975, 980 (Ind. Ct.App.1999). "The purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victim caused by the offense." *Carswell v. State,* 721 N.E.2d 1255, 1259 (Ind. Ct.App.1999). "[A]n order of restitution is as much a part of a criminal sentence as a fine or other penalty." *Creager v. State,* 737 N.E.2d 771, 779 (Ind.Ct.App.2000), *trans. denied.* Because restitution is penal in nature, the statute governing it must be strictly construed against the State in order to avoid enlarging it by intendment or implication beyond the fair meaning of the language used. *Cherry v. State,* 772 N.E.2d 433, 439 (Ind.Ct.App.2002), *trans. denied.*

Indiana Code § 35–50–5–3, which governs restitution orders, provides in relevant part:

> [I]n addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of:
>
> . . .
>
> (5) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime.

Ind.Code § 35–50–5–3(a)(5). Joshua argues that it was improper for the trial court to order him to pay Walker's funeral expenses because Walker was not a "homicide victim" because he was acquitted of murder and all of its lesser-included offenses.

This Court addressed this issue in *Utley v. State,* 699 N.E.2d 723 (Ind.Ct.App.1998), *trans. denied.* In *Utley,* the defendant was charged with reckless homicide and leaving the scene of an accident for running over his former girlfriend with his car. The jury found the defendant guilty of leaving the scene of an accident. The trial court sentenced the defendant to four years and ordered him to pay the victim's funeral expenses. On appeal, the defendant argued that the trial court erred in ordering him to pay the victim's funeral expenses because a trial court can only order a defendant convicted of a homicide to pay funeral expenses. In addressing this issue, this Court first noted that Indiana Code § 35–50–5–3(a) "simply list[s] the considerations the trial court must make in fashioning a restitution order." *Id.* at 729. The court refused to interpret subsection (a)(5) to limit a trial court's authority to require a defendant to pay a victim's funeral expenses to cases involving convictions for homicides. *Id.* (interpreting identical language then found at Indiana Code § 35–50–5–3(a)(4)). Rather, the court held that "restitution is properly ordered payable to those shown to have suffered injury, harm or loss as a direct and immediate result of the criminal acts of the defendant." *Id.* However, because the jury convicted the defendant of failing to stop at the scene of an accident, and not reckless homicide, the court said that it was apparent that the victim was an accident victim and not a victim of a crime. *Id.* Therefore, the court concluded that no funeral expenses were incurred by the victim's estate because of the defendant's failure to stop at the scene of the accident. *Id.*

Here, however, Joshua was convicted of battery as a Class C felony for beating

Walker. And Joshua does not dispute that Walker died as a result of the injuries that he caused. Because Walker's family suffered financial loss as a direct and immediate result of Joshua's criminal act, the trial court did not abuse its discretion in ordering Joshua to pay Walker's funeral expenses.

### Conclusion

The State met its burden of negating at least one of the elements of self-defense because the force Joshua used was not proportionate to the requirements or urgency of the situation. The photographs of Walker admitted into evidence were relevant and neither unduly prejudicial nor cumulative. The trial court properly denied Joshua's Motion to Correct Error because Joshua failed to prove that he was entitled to a new trial on grounds of either a *Brady* violation or newly discovered evidence. Because the trial court properly found six aggravators and concluded that they outweighed the four mitigators, we conclude that the trial court did not abuse its discretion in sentencing Joshua to the maximum term. Furthermore, Joshua's eight-year sentence is not inappropriate because Joshua, who had a history of criminal and delinquent activity as well as arrests, brutally beat a man causing his death. Lastly, because Walker's family suffered financial loss as a direct and immediate result of the battery, the trial court did not abuse its discretion in ordering Joshua to pay Walker's funeral expenses.

Judgment affirmed.

NAJAM, J., concurs.

BAILEY, J., concurring in part and dissenting in part with separate opinion.

BAILEY, Judge, concurring in part and dissenting in part.

I concur with the majority opinion in all respects except for the affirmance of Martin's sentence. I believe that Martin's maximum eight-year sentence for Aggravated Battery was "inappropriate in light of the nature of the offense and the character of the offender," *see* Ind. Appellate Rule 7(B), and should therefore be revised. As the majority notes, the starting point for our determination of the appropriateness of Martin's sentence is the recognition that pursuant to Indiana Code section 35–50–2–6(a), the presumptive sentence for the crime he committed was four years. *See Winbush v. State*, 776 N.E.2d 1219, 1226 (Ind.Ct.App.2002), *trans. denied.* While an enhanced sentence may be appropriate in light of the nature of the offense when compared with other offenses within its category, and in view of the offender's category, the maximum sentence enhancement should be reserved for the very worst offenses and offenders. *See id.*

While Martin's battery of Walker was undoubtedly severe, and the ultimate result tragic, Martin was, after all convicted of battery resulting in serious bodily injury. Given the facts, as noted by the trial court at sentencing, that Walker instigated the fight, and that Martin acted in the defense of his father and under strong provocation, I cannot conclude that Martin's offense amounted to the worst example of a battery resulting in serious bodily injury.

Moreover, while Martin has a history of run-ins with the law, his four convictions consisted of theft, minor possession of alcohol, illegal consumption, and littering. A history of criminal activity is certainly evidence of poor character. In my view, however, the nature of these offenses does not place Martin in the category of the very worst of offenders.

For these reasons, I believe that Martin's maximum eight-year sentence was in-

appropriate in light of the nature of the offense and the character of the offender, and I would reduce his sentence to six years. In all other respects I concur with the opinion of my colleagues.