ATTORNEY FOR APPELLANT
Dustin Houchin
Salem, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 36S00-0608-CR-285

ANTHONY R. STOCKELMAN,

*Appellant (Defendant Below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff Below).*

_____

Appeal from the Jackson Circuit Court, No. 36C01-0505-MR-002
The Honorable William E. Vance, Judge

_____

**June 20, 2007**

**Shepard, Chief Justice.**

Appellant Anthony R. Stockelman pled guilty to charges of murder and child molesting that arose out of the death of ten-year-old Katlyn Maria Collman. Stockelman challenges the propriety of the sentence of life without parole imposed by the trial court for the murder. We affirm.

Katie Collman left her home in Crothersville, Indiana at about 3 p.m. on January 25, 2005, to run an errand for her mother at the local Dollar General Store. She was never seen alive

again. The State Police discovered her body five days later in a waterway at nearby Cypress Lake. The State Police Laboratory matched Stockelman's DNA to swabs taken from the victim's body, to cigarette butts at the crime scene, and to red carpet fibers taken from her body and from the carpet in the home of Stockelman's mother. A local witness had seen the victim riding in a Ford truck that matched Stockelman's.

The State charged Stockelman with murder, child molesting as a class A felony, and criminal confinement. It requested the death penalty, alleging the victim's age as the aggravating circumstance. A year or so later, Stockelman and the State entered into a plea bargain. Stockelman agreed to plead guilty to murder and child molesting and to waive his right to have the State submit aggravating circumstances to a jury. The State agreed to drop the death penalty and dismiss the confinement charge. The sentencing was thus left to the court alone. After a hearing involving several witnesses, it imposed life without parole for the murder, followed by thirty years for child molesting.

Stockelman requests that we revise the sentence for murder, citing the provision of Indiana Rule of Appellate Procedure 7(B): "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In the main, he contends that the trial court did not adequately recognize or give adequate weight to four mitigating circumstances.

First, Stockelman argues that he had no significant history of prior criminal conduct. His only two convictions were misdemeanors, one twenty years in the past for purchasing beer for his younger brother and the other for battery. The State responds that this record bears some similarity to one we declared adequate for rejecting a claim that the defendant had no significant prior record. Bacher v. State, 722 N.E.2d 799 (Ind. 2000). It also notes that witnesses called by Stockelman during the sentencing hearing testified that he had become "deeper and deeper" into drugs and that he had abused his former wife on multiple occasions, demonstrating prior criminal conduct. (Sentencing Hr'g Tr. at 14, 32.)

2

On this record, we find ourselves unable to say that the trial judge erred in rejecting Stockelman's claim that he had lived a relatively crime-free life.

Second, Stockelman says that he committed the crime under the influence of extreme mental or emotional disturbance. Ind. Code Ann. § 35-50-2-9(c)(2) (West 2007). Stockelman testified that his father had died six months before the crime after a long bout with cancer. Other witnesses testified that he had been very close to his father, that he cared for his father while he was dying, and that his father's death had a great impact on Stockelman's mental and emotional state.

The State responds that there is no clinical evidence as respects Stockelman's mental condition, and it points to testimony by defense witnesses. Stockelman's brother testified that he seemed "withdrawn" as a result of his father's death, and a family friend said that while Stockelman was "very upset" about the passing, it was "nothing . . . out of the ordinary." (Sentencing Hr'g Tr. at 47, 64.) On balance, this proposed mitigator seems to have modest weight at most.

Third, Stockelman correctly says that pleading guilty can be a mitigating circumstance for sentencing purposes. The State replies that Stockelman has already gained a significant benefit from his plea bargain, namely, managing to take the death penalty off the table. As above, we conclude that this mitigator carries modest weight at best.

Fourth, Stockelman argues that his incarceration will impose a significant hardship on his two sons, aged six and thirteen. Witnesses testified during the sentencing hearing that Stockelman had been active in the life of his sons and that they enjoyed a "very close relationship." (Id. at 21.) Those witnesses also testified that the boys were being cared for by blood relatives and were generally doing as well as could be expected. The State notes that under any calculation, even if Stockelman received concurrent advisory sentences, the boys would be adults before Stockelman was released. One way or another, it argues, the boys will have to spend their young lives without their father. We think this mitigator carries minimal weight.

All in all, given the aggravating circumstance of killing a ten-year-old girl, we find ourselves unable to say that the trial court was wrong to weigh that aggravator more heavily than the proffered mitigators or that the sentence imposed was inappropriate.

We therefore affirm.

Sullivan, Boehm, and Rucker, JJ., concur.
Dickson, J., concurs in result with separate opinion.

**Dickson, Justice**, concurring in result.

The Court is generous in its treatment of the defendant's appellate presentation. His brief initially asserts only one issue: whether his sentence is appropriate in light of the nature of the offense and character of the offender. Appellant's Br. at 1. This is the test by which appellate courts implement their authority to review and revise criminal sentences. Ind. Appellate Rule 7(B). His summary of argument, however, contends that his sentence is inappropriate "for the reason that the trial court failed to consider or give proper weight to the mitigating circumstances in this case." Appellant's Br. at 3. And the argument section of the defendant's brief does not address appropriateness in light of his character or the nature of the offense but discusses only his claim that the trial court erred in its consideration of all the mitigating evidence. This claim is for appellate reversal due to trial court abuse of discretion, not a request for the exercise of appellate sentencing review authority under Rule 7(B).[1]

The two criteria to be used for the Rule 7(B) analysis, the nature of the offense and character of the offender, are distinct from the aggravating and mitigating circumstances a trial court is statutorily required to identify and weigh in its sentencing determination.

But the defendant makes no claim or showing that the nature of his offense calls for particular leniency or that there are virtuous aspects of his character that warrant special consideration, either or both of which might justify our intervention in the trial court's sentencing determination under Appellate Rule 7(B). On this issue, he presents no argument.

While I agree with the majority's decision to affirm, I quibble with its concluding finding that the sentence was appropriate, which suggests that the defendant sought and the court exercised the appellate review and revise authority pursuant to Appellate Rule 7(B).

---

[1] The defendant cites <u>Martin v. State</u>, 784 N.E.2d 997, 1013 (Ind. Ct. App. 2003), as authority for merging the trial court sentencing considerations into the appellate review and revise function under Rule 7(B). I disagree with the Court of Appeals rationale in <u>Martin</u> on this point.

5