**Delton C. GERALDS, Appellant– Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–9311–CR–618.**

Court of Appeals of Indiana, Second District.

March 2, 1995.

Transfer Denied May 25, 1995.

---

Bruce G. Jones, Austin, Jones & Morken, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

Delton C. Geralds (Geralds) was convicted of Involuntary Manslaughter,[1] a Class C felony, after trial by jury. He was sentenced to a presumptive four year term of imprisonment, with four years added for aggravating factors. Four years of the eight were suspended. We rephrase the issues Geralds presents upon appeal as follows:

(1) Did the trial court err in its decision that evidence of Geralds' aid to Federal agents, including his recent testimony against several Los Angeles gang members, was irrelevant to support his claim of self-defense?

(2) Did the trial court improperly fail to consider evidence which would have constituted clearly mitigating circumstances for purposes of assessing Geralds' sentence?

We affirm the conviction and the sentence.

In October of 1991, Geralds was the owner of Del's Guns, a store located in a small strip shopping center located at the corner of 38th Street and Shadeland Avenue in Indianapolis. A bookstore occupied the suite at the southern end of the shopping center; Del's Guns was located next door, on the north side of the bookstore. Geralds leased the suite beside the gun store as his residence, because he feared for the security of his business, while the suite at the northern end of the shopping center remained unoccupied.

In the early morning hours of October 20, 1991, Geralds was awakened by a dull thudding upon the ceiling of his bedroom. Unbeknown to Geralds, Damien Williams (Williams) had entered through a door in the unoccupied suite of the strip center's northernmost end, and had begun to make his way above the suspended ceiling toward Del's Guns. He carried a backpack, a flashlight, and a knife. Once Geralds heard Williams,

---

1. I.C. 35–42–2–1 (Burns Code Ed.Repl.1994)

he armed himself with a high-powered, nine millimeter machine gun and exited his residence to look around. Upon finding nothing outside, Geralds reentered his suite.

About ten minutes later, Williams partially fell through the suspended ceiling, exposing his left hand, which held a flashlight. Geralds fired twenty to twenty-five shots at Williams, who escaped above the ceiling unharmed. Geralds then left his suite, running outside to the northern end of the building. While he stood six feet from the door leading to the unoccupied suite, Williams burst through, running away from Geralds. Again, Geralds fired; this time, Williams was felled by one of Geralds' ten to fifteen rounds. He died of a single gunshot, which entered just above his left ear, and exited on the lower right side of his skull. When police arrived, Geralds told officers that he had never seen Williams hold a weapon, although he indicated that he believed Williams had stumbled, or attempted to turn around, prior to being shot. Geralds was charged with Involuntary Manslaughter.

The trial court excluded evidence which was proffered to show that Geralds had reason to fear, and did fear for his life, as a result of assisting law enforcement officials to convict Los Angeles gang members involved in drug activity and acquisition of firearms. The trial court's ruling was that the evidence was irrelevant as a matter of law because Geralds' fear of gang retaliation was in no way connected to Williams or to any actions taken by Williams. This ruling has a degree of case law support in *Johnson v. State*, (1994) 2d Dist.Ind.App., 645 N.E.2d 643, and cases there cited.

Through an offer to prove, Geralds submitted testimony that for the preceding three years, he had been working to provide information of gang activity to the Bureau of Alcohol, Tobacco and Firearms (BATF). In-

deed, Geralds had initiated a BATF investigation when he noticed unusual gun-buying activity in his store. The BATF, working from Geralds' store, and with a substantial amount of cooperation from him, exposed a scheme in which members of a Los Angeles gang, the Crips, used laundered drug money to buy guns in Indianapolis and to ship them back to Los Angeles. The investigation led to six arrests. Four members of the Crips plead guilty to federal charges; two others, Jerome Marshall and Mondo Elliot, were tried in Federal District Court for the Southern District of Indiana. On September 30, 1991, both men were convicted.[2]

Geralds had testified against both defendants. Agents of the BATF warned him that the gangs were violent and that he should expect retaliation by gang members who were angered because Geralds had been instrumental in jailing their associates. Geralds several times expressed fear to agents that his life was in danger.

## I.

Geralds' sole defense rested upon the theory of self-defense.[3] At the moment he fired upon Williams, Geralds claimed, his actions were based upon his subjective belief that Williams was a Crips member who was in the process of perpetrating the expected retaliation.[4] He contends that his participation in the BATF investigation was a part of the "surrounding circumstances" which the jury should have been permitted to take into account in assessing his defense.

Here, we find it unnecessary to address whether Geralds' proffered evidence of the "surrounding circumstances" was relevant to show that he acted in fear or apprehension of death or great bodily harm.[5] Because the force he employed was unreasonable and excessive, Geralds has indisputably destroyed any claim to self-defense that he

---

2. Although it is not clear which, one defendant received a life sentence without the possibility of parole.

3. I.C. 35–41–3–2 (Burns Code Ed.Repl.1994)

4. At trial, Geralds indicated that the reason he was in fear was because he believed the gun shop was being broken into.

5. We note that, had it been necessary to address this issue in greater detail, our review of the trial court's evidentiary ruling upon the issue of relevancy would have been confined to a determination of whether the court abused its discretion. *Bates v. State* (1986) Ind., 495 N.E.2d 176, 177–78.

may have possessed. Self-defense requires a showing that "the defendant was in real danger of death or great bodily harm, or in such apparent danger as caused him, in good faith, to fear death or great bodily harm." *Franklin v. State* (1977) 266 Ind. 540, 364 N.E.2d 1019, 1021. That degree of force termed "deadly force" is justified only when a person believes that degree of force is necessary to prevent such injury. I.C. 35–42–3–2(b) (Burns Code Ed.Repl.1994); *Spinks v. State* (1982) Ind., 437 N.E.2d 963, 965. Not only must the belief be in good faith, but the defendant's reaction to that belief must be reasonable based upon the surrounding circumstances under which the events have occurred. *Franklin, supra* 364 N.E.2d at 1021, *quoting Heglin v. State* (1957) 236 Ind. 350, 140 N.E.2d 98.

■ Although the evidence, had it been presented, might have shown that Geralds' fear was reasonable, his actions were most decidedly not. The amount of force which is reasonably necessary to defend oneself is determined from the standpoint of the accused in light of the surrounding circumstances. *Gunn v. State* (1977) 1st Dist., 174 Ind.App. 26, 365 N.E.2d 1234, 1240. However, the force used must be proportionate to the requirements of the situation. *Carbo, Inc. v. Lowe* (1988) 3d Dist.Ind.App., 521 N.E.2d 977, 979, *trans. denied.* Where a person has used more force than is reasonably necessary to repel an attack, the right of self-defense is extinguished, and the ultimate result is that the intended victim then becomes the perpetrator. *Degenias v. State* (1979) 3d Dist., 179 Ind.App. 684, 386 N.E.2d 1230, 1231. Deadly force is not justifiable when used against a person trespassing upon property, in the absence of an imminent threat against the accused. *Bullard v. State* (1964) 245 Ind. 190, 195 N.E.2d 856. Here, the force Geralds used was deadly; it was excessive in the face of Williams' obvious retreat and lack of aggression towards him.

■ The evidence is undisputed that, when Williams, a would-be burglar, fell through his ceiling, Geralds fired his automatic machine gun twenty to twenty-five times. The trial court in making its evidentiary ruling was entitled to conclude, as a matter of law, that such reaction was excessive. His own testimony of the incident also reveals that Geralds did not call the police, though he had ample opportunity; instead, he ran outside to attempt to pursue and confront the perpetrator.[6]

More importantly, however, and determinative, is the fact that Williams was running away from Geralds, and that Geralds fired ten to fifteen additional rounds from a high-powered machine gun.[7] Even were we to believe Geralds when he testified at trial that Williams was in the process of turning to face him, that does not change the fact that he was, as yet, thirty to forty feet away, that he was in the process of fleeing, that he made no threatening gesture, and that Geralds never saw a weapon.

■ We are cognizant that the question of the proper amount of force is normally a question left for the jury's determination. *Degenias, supra*, 386 N.E.2d at 1232. However, in a situation such as this, a jury could only find that Geralds overreacted in the extreme. Thus, there is no question but that the exclusion of Geralds' proffered evidence of surrounding circumstances, if error at all, was harmless and had no prejudicial impact upon the outcome of his trial.

## II.

Geralds claims that the trial court committed error in sentencing him when it neglected to find clearly supported mitigating factors. The trial court did find that several mitigating factors existed.[8] However, Ger-

---

6. We note here that Geralds' actions in running outside, exposing himself to danger, seem directly contra to his proffered testimony of an all-encompassing fear of highly-armed gang members.

7. We also note that a defendant's claim of self-defense lacks merit where the original aggressor has retreated, but the defendant pursues him with force, to the aggressor's ultimate demise. *Jester v. State* (1990) Ind., 551 N.E.2d 840, 844.

8. The mitigating factors the court found to exist were: (1) that the crime was the result of circumstances unlikely to recur; (2) that Geralds had no history of delinquency or criminal activity; and (3) that Geralds had made restitution for the injury.

alds claims that he presented clear evidence of several statutory mitigating factors, as per I.C. 35-38-1-7.1(c) (Burns Code Ed.Supp. 1994), which the trial court ignored, to wit: that Williams induced or facilitated the offense, that the surrounding circumstances, though failing to establish a defense, were tantamount to "substantial grounds tending to excuse or justify the crime," that Geralds acted under strong provocation, that testimony existed that Geralds was likely to respond affirmatively to probation or short term imprisonment, and that Geralds' imprisonment would result in undue hardship upon his mother and daughter, both of whom he partially supported.

At the outset, we state the well-founded principle that, when sentencing a person convicted of a crime, the trial court is vested with a great deal of discretion, and its determination will be reversed only upon a showing of an abuse of that discretion. *Wall v. State* (1991) Ind., 573 N.E.2d 890, 894. It is not required to find that mitigating circumstances exist at all. *Aguirre v. State* (1990) Ind., 552 N.E.2d 473, 476. Here, the trial court did find three mitigating circumstances existed; however, that the court in this case did not view Geralds' evidence of mitigating factors in the same light as Geralds, does not indicate error.

Geralds cites *Beatty v. State* (1991) Ind., 567 N.E.2d 1134, for the proposition that, where the court fails to find mitigating circumstances that are clearly supported by the record, such a failure may mean that they were overlooked by the court. Although that is a correct statement of the law, in the present case we are unable to conclude that Geralds' proposed mitigating factors, which he contends the trial court ignored, were "clearly supported" by the record.

Geralds correctly contends that were it not for the burglary perpetrated by Williams, the shooting death would not have occurred. Nevertheless, in light of the termination of the burglary and Williams' attempt to flee, we do not agree that he facilitated his own homicide.

Neither do we find persuasive Geralds' contention that the surrounding circumstances, though not constituting a defense, are as yet substantial grounds tending to excuse or justify the crime.[9] Although counsel's argument upon appeal is unclear, it seems that the "substantial grounds" to which Geralds refers are the facts indicating Geralds was in constant fear of his life due to his involvement in the BATF gang investigation, coupled with the fact that Williams fell through his ceiling in the early morning hours while attempting to perpetrate a burglary.[10] However, the transcript of the sentencing hearing demonstrates that evidence of Geralds' cooperation with the BATF and his testimony against gang members was introduced for the sole purpose of showing that his life would be in danger were he to go to prison. That evidence was not submitted at the sentencing hearing to demonstrate "substantial grounds" to justify Geralds' actions.

In a sentencing hearing, it is the defendant's responsibility to bring those matters favorable to him to the attention of the trial court. *Green v. State* (1981) Ind., 422 N.E.2d 1190, 1192. At his sentencing hearing, trial counsel specifically enumerated several statutory mitigating grounds and the evidence which would support each ground. The only evidence Geralds introduced to show "substantial grounds tending to excuse or justify" his actions was his assertion that Williams fell through the ceiling, which necessitated his self-defense.

Thus, upon appeal, we necessarily restrict Geralds' argument that the court overlooked a clearly supported mitigating factor to the sentencing evidence presented to the trial court and the context in which that evidence is put forth. The court acted within the

**9.** I.C. 35-38-1-7.1(c)(4) (Burns Code Ed.Repl. 1994).

**10.** The conclusion that this is Geralds' argument upon appeal is drawn from this portion of his appellate brief: "Factors [I.C. 35-38-1-7.1(c)] 3 through 5 were established by the evidence, admitted and not, of Williams' culpability and Geralds' self-defense." Appellant's Brief at 27. The only evidence to which he refers which is not admitted is the evidence of Geralds' BATF involvement and his constant fear against retaliation by gang members.

confines of its discretion in failing to find that Geralds' behavior was excused or justified.

 Previously, we determined that the force Geralds used was excessive. This determination cannot be viewed in isolation; it must be squared with the trial court's sentencing determination. Here, the trial court took into account the "staggering" amount of firepower Geralds used, and his failure to call police, though he had ample opportunity. Record at 623. We cannot find that the court abused its discretion. Indeed, this case demonstrates that "'treachery and violence are spears pointed at both ends: they wound those who resort to them, worse than their enemies.'" EMILY BRONTE, WUTHERING HEIGHTS 216 (Wordsworth Editions Ltd.1992 ed.). As the trial court weighed the mitigating factors it found against the aggravating factors, we cannot conclude that it was remiss in finding that the evidence presented did not constitute "clearly supported" substantial grounds tending to excuse or justify Geralds' actions.

We find Geralds' further contentions to be without merit. He argues that the trial court ignored evidence of undue hardship upon his family and evidence that short-term imprisonment or probation would be effective in his case. The record shows that the trial court heard testimony both from Geralds' daughter, and from his psychologist. We can only assume that it adequately examined Geralds' additional contentions, and note, once again, that a trial court is not bound to find mitigating circumstances from the evidence presented. *Aguirre, supra,* 552 N.E.2d at 476.

Although a different sentencing authority, under the circumstances, might well have concluded that the four-year presumptive sentence was more than adequate, we are unable to state that the eight-year sentence, with four years suspended is "manifestly unreasonable". App.Rule 17.

The judgment is affirmed in all respects.

KIRSCH and HOFFMAN, JJ., concur.