Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**CORY LIGHTNER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOSE RODRIGUEZ, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | ) No. 49A05-1406-PC-289 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G02-0811-PC-264751

**December 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jose Rodriquez ("Rodriquez") appeals the denial of his petition for post-conviction relief, which challenged his convictions for Attempted Murder, a Class A felony,[1] and Carrying a Handgun without a License, a Class A misdemeanor.[2]  He presents the single issue of whether he was denied the effective assistance of trial counsel.  We affirm.

**Facts and Procedural History**

The relevant facts were recited by a panel of this Court on direct appeal:

The evidence most favorable to the verdict reveals that Rodriquez, his friend Mehn Mon Sorn, and Sorn's brother Chai were all members of a criminal gang known as the "West Side 13."  The West Side 13 is a local chapter of the "Surenos" or "Sur 13" gang based in Southern California.  To join the Sur 13, prospective members must commit a felony and/or sustain a battery from current members for an allotted period of time.  The West Side 13 has a longstanding rivalry with another local Indianapolis gang known as "18th Street."  Typical practice of the gangs is to commit violent crimes against one another.

One night Rodriquez, Sorn, and Chai attended a house party in Indianapolis.  Both Rodriquez and Sorn were armed with .380 caliber handguns.  Sorn brought an additional rifle which he stored underneath his car.

Also attending the party was Elesvan Cabrales-Cantreras and his friend Rogelio Rojas.  Cabrales-Cantreras and Rojas were believed to be members of the rival 18th Street gang.

At some point Sorn became involved in a dispute with Rojas in the backyard.  Soon they resulted to fisticuffs.  Sorn revealed his pistol to Rojas.  Rojas said he was going to retrieve his own gun, and he began running toward the front of the house.

---

[1] Ind. Code §§ 35-42-1-1, 35-41-5-1.  The offense is now a Level 1 felony.  We refer to the version of the statute in effect at the time of Rodriquez's offenses.

[2] Ind. Code § 35-47-2-1.

Sorn informed Rodriquez that Rojas was getting a gun. Rodriquez responded, "Let's go get them." Sorn instructed Chai to retrieve the rifle from underneath his car. Rojas ran to the front of the house and called out for Cabrales-Cantreras. Cabrales-Cantreras was inside. He announced to his friends, "Let's get out." The partygoers made their way out the front door.

Rojas and several other people – also alleged to be 18th Street gang members – assembled in the middle of the street. The West Side 13 members remained in front of the house.

Police Officer David Moore was driving nearby to assist a traffic stop when he observed the hubbub. He saw two distinct lines of people forming in the street, as in a Civil War scene. Officer Moore made a u-turn to investigate.

Rodriquez began discharging his handgun. Chai fired into the crowd using the rifle. Sorn drew his own gun when Cabrales-Cantreras approached and punched him. Sorn fell to the ground. The two then started to wrestle over Sorn's gun. Sorn called out to Rodriquez, "Get this dude."

Rodriquez stood three to five feet away, aimed at Cabrales-Cantreras, and shot him in the back of the leg. Cabrales-Cantreras continued to fight with Sorn. Rodriquez started to run away but stopped and turned back. He shot Cabrales-Cantreras twice more. Then his gun jammed, so he took the rifle from Chai and shot Cabrales-Cantreras again. Rodriquez and Chai heard police sirens and fled.

Officer Moore approached on foot and observed Sorn and Cabrales-Cantreras still wrestling. Officer Moore identified himself and ordered them to stop. Sorn rolled away in the prone position. Cabrales-Cantreras shot four times in Moore's direction. Moore fired three shots back. Cabrales-Cantreras aimed at Moore again, at which time Moore discharged four more rounds. Cabrales-Cantreras fell over dead, having sustained a total of fourteen gunshot wounds. Moore inflicted seven of them.

The State charged Rodriquez with, among other things, the Class A felony attempted murder of Cabrales-Cantreras. The State also sought a sentencing enhancement for attempted murder, alleging that Rodriquez had acted at the direction of or in affiliation with a criminal gang.

The State filed notice of intent to offer evidence of Rodriquez's gang membership during the guilt phase of trial. The State sought to introduce the evidence as proof of motive. The trial court granted the State's request

following a hearing and over the defense's motion to exclude. Evidence of Rodriquez's gang membership was introduced in the State's case-in-chief.

A jury found Rodriquez guilty as charged, and in a bifurcated sentencing proceeding, the jury found that Rodriquez was a criminal gang member and that he had acted at the direction of or in affiliation with the gang.

The trial court sentenced Rodriquez to twenty-five years for attempted murder plus an additional twenty-five years due to the gang-affiliation enhancement.

Rodriquez v. State, No. 49A05-1006-CR-410, slip op. at 2-5 (Ind. Ct. App. September 9, 2011), trans. denied.

Rodriquez appealed his convictions, contending that the admission of evidence of his gang affiliation was irrelevant and unfairly prejudicial, there was insufficient evidence to sustain his attempted murder conviction and the sentencing enhancement, and his sentence was inappropriate. Id. at 5. The convictions were affirmed. Id. at 14.

On August 30, 2012, Rodriquez filed a pro-se petition for post-conviction relief. Subsequently, with the assistance of counsel, he filed an amended petition. Therein, he alleged that he had been denied the effective assistance of trial counsel because counsel failed to tender appropriate jury instructions. On October 16, 2013, the post-conviction court conducted a hearing. On May 28, 2014, the post-conviction court entered its findings, conclusions, and order denying Rodriquez relief. He now appeals.

**Discussion and Decision**

Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5);

4

Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. Id. In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

Effectiveness of Trial Counsel

Effectiveness of counsel is a mixed question of law and fact. Strickland v. Washington, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in Strickland. Id. To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. Dobbins v. State, 721 N.E.2d 867, 873 (Ind. 1999) (citing Strickland, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. Strickland, 466 U.S. at 687; see also Douglas v. State, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

5

probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Cook v. State, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the Strickland test are separate and independent inquiries. Strickland, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. Id. In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. Autrey v. State, 700 N.E.2d 1140, 1141 (Ind. 1998).

Rodriquez claims that his trial counsel should have tendered two jury instructions: a limiting instruction with regard to gang affiliation evidence and an instruction on defense of others.

Limiting Instruction. At a pretrial hearing held on May 13, 2009, the trial court advised the parties that evidence of gang affiliation would be permitted as to motive, and

6

suggested to the Prosecutor that he needed to prepare an instruction for the jury. The Prosecutor agreed to provide an instruction "that they're receiving this evidence for the limited purpose of motive." (Pretrial Tr. at 6.) However, the Prosecutor did not provide such an instruction. Neither did defense counsel. According to Rodriquez, defense counsel's failure to correct the Prosecutor's omission amounted to ineffective assistance of counsel.

The failure to tender an instruction does not automatically amount to ineffectiveness of counsel. Rather, according to Strickland, Rodriquez must show there is a reasonable probability that, but for the error or omission, the result of the proceeding would have been different.

In his opening statement, defense counsel conceded that Rodriquez was a gang member. Rodriquez testified and admitted his gang affiliation. The record is replete with evidence of a gang rivalry between West Side 13, to which Rodriquez belonged, and 18th Street, to which Cabrales-Cantreras belonged. In light of this, the jury received Final Instruction 6, which provided:

> Neither sympathy nor prejudice for or against either the complaining witness or the Defendant in this case should be allowed to influence you in whatever verdict you may find.

(App. 43.) In his closing statement, the Prosecutor referenced gang membership as having relevance to motive. Defense counsel also argued: "The gang thing is to try to supply a motive for what happened. Well, we also supplied the motive for what happened and that was jealousy[.]" (Tr. at 584.)

7

The post-conviction court concluded that, under these circumstances, Rodriquez did not suffer prejudice from the lack of a limiting instruction such that he was deprived of the effective assistance of trial counsel. Although the better practice would have included submission of a limiting instruction, Rodriquez was not denied a fair trial. The combatants were gang members, the jury was advised to refrain from allowing sympathy or prejudice to influence their verdict, and the evidence of gang membership was presented and discussed in the context of motive. The post-conviction court did not reach a clearly erroneous conclusion when it determined that a limiting instruction would not likely have changed the outcome of Rodriquez's trial.

Defense of Others Instruction.

Rodriquez also claims that his trial counsel was ineffective for his failure to tender an instruction on defense of others. At the post-conviction hearing, trial counsel testified that there was evidence that "possibly" could have supported the defense, but he did not tender such an instruction. (P.C.R. Tr. at 10.)

Defense of self or others as an affirmative defense is established by Indiana Code Section 35-41-3-2(a): "A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."

> To support a claim of self-defense, a defendant must have acted without fault, been in a place where he had a right to be, and been in reasonable fear or apprehension of bodily harm. Brewer v. State, 646 N.E.2d 1382, 1386 (Ind. 1995). The defendant's belief … must be reasonable and in good faith, and his "reaction to that belief must be reasonable based upon the surrounding

8

circumstances under which the events have occurred." Geralds v. State, 647 N.E.2d 369, 373 (Ind. Ct. App. 1995).

White v. State, 699 N.E.2d 630, 635 (Ind. 1998).

Rodriquez's testimony belies a defense of others claim. He testified that he shot one shot into the ground and three shots into the air. He also testified: "I told Chai, Don't shoot, and he shot at [Cabrales-Cantreras]." (Tr. at 504.) Rodriquez denied personally shooting Cabrales-Cantreras, testifying he "had the opportunity but I didn't want to." (Tr. at 510.) In sum, he claimed that he fired warning shots and attempted to diffuse the situation; he did not claim to have used reasonable force against Cabrales-Cantreras.

Testimony offered by other witnesses was that Rodriquez shot Cabrales-Cantreras multiple times before his gun jammed. He then took Chai's gun and shot Cabrales-Cantreras again before fleeing. It is well-settled that firing multiple shots undercuts a claim of self-defense. Randolph v. State, 755 N.E.2d 572, 576 (Ind. 2001).

The State's witnesses described an intentional shooting. Rodriquez denied shooting the victim at all. Trial counsel's decision not to tender a defense of others instruction represented a reasonable trial strategy given the evidence presented.

## Conclusion

Rodriquez has not overcome the presumption that he received the effective assistance of trial counsel. Accordingly, the post-conviction court properly denied Rodriquez's petition for post-conviction relief.

Affirmed.

ROBB, J., and BROWN, J., concur.

9