## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2016, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mauricio Martinez,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

March 28, 2016

Court of Appeals Case No.
49A02-1506-PC-547

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge
The Honorable Amy J. Barbar, Magistrate

Trial Court Cause No.
49G02-0810-PC-230416

**Bailey, Judge.**

# Case Summary

Appellant-Petitioner Mauricio Martinez ("Martinez") appeals the denial of his petition for post-conviction relief, following his convictions for Murder and Carrying a Handgun Without a License. We affirm.

# Issues

Martinez presents two issues for review:

I. Whether he was denied the effective assistance of trial counsel; and

II. Whether he was denied the effective assistance of appellate counsel.

# Facts and Procedural History

The relevant facts were recited by a panel of this Court on direct appeal, as follows:

> In the early morning hours of August 17, 2008, Luis Velez ("Luis") was drinking beer in an outside stairwell of the Eagle Terrace Apartment Complex ("Eagle Terrace") in Indianapolis with his friend, Anjel Valazques-Luis, known as "Cowboy." Several other people were present in the area, including a woman known as "Tee," a man named Jose, whose nickname was "Mechanico," and a prostitute who was known as "Cherry." Cowboy was trying to arrange to "do business," or to have sex with Cherry. Cherry was not interested in doing business with either Cowboy or his friend from across the street because of Cowboy's drunken state.

A dark colored Mitsubishi Eclipse carrying four people pulled up and parked nearby. Martinez exited the passenger side of the vehicle and began to talk to Cherry. Martinez and Cherry had done business two or three times over the past eight years, with the most recent being approximately three weeks prior. Martinez and Cherry were "talking business," and Cowboy became increasingly upset, interrupting their conversation several times. Luis tried to diffuse the situation by calling Cowboy over to the stairwell to give him a beer and a cigarette to calm him. Cowboy only stayed with Luis for a few minutes, then went back to Martinez and Cherry. Luis could see the body language of Cowboy and Martinez getting more hostile, and Cherry moved away. The two men were within arm's reach of each other. Martinez then shot Cowboy twice, once from close range, with the gun touching the abdomen, and again in the shoulder as Cowboy tried to flee across the street. Cowboy collapsed on the sidewalk, and everyone fled from the area. Cowboy died as a result of the shooting.

On October 8, 2008, Martinez was arrested and taken to the Indianapolis Metropolitan Police Department headquarters to be interviewed shortly after midnight. The interview was conducted by Detective Chris Minka and Officer Jesus Soria ("Officer Soria"), who acted as the interpreter, and was done almost entirely in Spanish. Martinez signed a waiver of rights form written in Spanish. Initially, Martinez denied ever being at Eagle Trace and denied ever seeing Cowboy. He denied having any friends and stated he only left his home to go to work to provide for his family. Eventually, Martinez claimed to have gone to Eagle Terrace to buy beer with his friend, Raleigh. Officer Soria tried to end the interview at one point, but Martinez indicated that he wanted to continue and told the officer that he had argued with Cowboy regarding where he and Raleigh parked and that Cowboy had pulled a gun on him. Martinez stated that, when he exited the apartment after purchasing the beer, Cowboy and others armed with machetes approached him. Martinez was

not entirely clear, but he told the officer that one of the men had a gun. He claimed that Raleigh threw him a handgun, and he fired two shots, hitting Cowboy from a distance of approximately eight feet. Martinez also stated that, although a prostitute was present, he and Cowboy were not fighting about her.

The State charged Martinez with murder and carrying a handgun without a license as a Class A misdemeanor.

*Martinez v. State*, No. 49A02-0910-CR-948, slip op. at 1-3 (Ind. Ct. App. May 17, 2010) (record citations omitted). On September 1, 2009, a jury found Martinez guilty as charged. He was given an aggregate sentence of fifty years. Martinez appealed, raising a single issue challenging the evidentiary admission of his statement to police. His convictions were affirmed. *Slip op.* at 4.

On April 26, 2011, Martinez filed a pro-se motion for post-conviction relief, alleging that he had received ineffective assistance from his trial and appellate counsel. With the assistance of counsel, Martinez filed an amended petition. An evidentiary hearing was conducted on December 17, 2014. On May 11, 2015, the post-conviction court issued findings of fact and conclusions of law and an order denying Martinez post-conviction relief. He now appeals.

# Discussion and Decision

## *Standard of Review*

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction

Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## *Self-Defense*

## *Effectiveness of Trial Counsel*

[6] Martinez contends he was denied the effective assistance of trial counsel in four respects: trial counsel (1) failed to tender an instruction on a lesser-included offense; (2) failed to conduct an adequate independent investigation; (3) failed to offer into evidence a toxicology report concerning the victim; and (4) proffered a discovery deposition in violation of Martinez's Sixth Amendment right of confrontation.

[7] Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland. Id.* To

prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.*

[8] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id.* In sum, trial strategy is not subject to attack

through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[9] Initially, Martinez complains that his trial counsel did not tender an instruction on a lesser-included offense such as voluntary manslaughter.[1] At the post-conviction hearing, trial counsel conceded that he did not offer any such instruction. He further explained:

> If my memory is correct, because of [Martinez's] statement, I think we were somewhat confined as to what our defenses were. So I don't recall that we had any theories other than self defense.

(P.C.R. Tr. at 33.) According to Martinez, although an "all or nothing defense" of self-defense[2] is reasonable in some circumstances, his statement to

---

[1] Although he includes a reference to reckless homicide in his summary of the argument, Martinez does not address the propriety of a reckless homicide instruction in his actual argument.

[2] Defense of self or others as an affirmative defense is established by Indiana Code Section 35-41-3-2(c): "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."

> To support a claim of self-defense, a defendant must have acted without fault, been in a place where he had a right to be, and been in reasonable fear or apprehension of bodily harm. *Brewer v. State*, 646 N.E.2d 1382, 1386 (Ind. 1995). The defendant's belief … must be reasonable and in good faith, and his "reaction to that belief must be reasonable based upon the surrounding circumstances under which the events have occurred." *Geralds v. State*, 647 N.E.2d 369, 373 (Ind. Ct. App. 1995).

police regarding an attack by armed men did not thus constrain trial counsel's choice of tactics. (Appellant's Br. at 10.)

[10] The record of a bench conference outside the presence of the jury indicates that trial counsel briefly considered offering an instruction on some lesser-included offense. However, the trial court questioned what evidence would support the giving of such an instruction, and counsel ultimately did not proffer an instruction on a lesser-included offense.

[11] Even now, Martinez does not identify a lesser-included offense instruction that would have had evidentiary support such that the trial court would have instructed the jury accordingly. He relies upon *Wilson v. State*, 697 N.E.2d 466, 474 (Ind. 1998), to support his proposition that "an instruction on voluntary manslaughter is supported when there is evidence of sufficient provocation to induce passion that renders a reasonable person incapable of cool reflection." (Appellant's Br. at 17.) However, to the extent that Martinez develops an argument with regard to supporting evidence, he asserts only that the victim, who had undefined "body language" indicating that he was upset, "was instigating the argument" and Martinez was trying to ignore him. (Appellant's Br. at 11, 13.) Martinez's abbreviated argument ignores the well-settled law that words alone are insufficient provocation to provide evidence of sudden

*White v. State*, 699 N.E.2d 630, 635 (Ind. 1998).

heat. *See Conner v. State*, 829 N.E.2d 21, 24 (Ind. 2005) ("Sudden heat excludes malice, and neither mere words nor anger, without more, provide sufficient provocation.") Martinez has not shown that a tendered instruction would have been given by the trial court or that it would have likely impacted the jury's verdict.

[12] Martinez also contends that his trial attorney failed to complete an appropriate investigation and secure appropriate witnesses. However, he fails to identify any witness that would have been uncovered by further investigation. Nor does he point to relevant evidence that would have surfaced with more diligent efforts on the part of trial counsel. He has not shown ineffectiveness in this regard. *See Coleman v. State*, 694 N.E.2d 269, 274 (Ind. 1998) (observing that the petitioner claiming inadequate consultation or investigation bears the burden of showing what additional information may have been garnered and how that additional information would have aided in the preparation of the case).

[13] According to Martinez, his trial attorney was ineffective for failing to offer into evidence a toxicology report that indicated the victim was intoxicated and had metabolites from cocaine and marijuana in his urine. Although the report was not formally admitted, Martinez has not shown prejudice from the omission. This is because the forensic pathologist who conducted the victim's autopsy testified in detail regarding the results of the toxicology report. Dr. Michael Kenny testified that the victim was "under the influence of ethyl alcohol," and had metabolites for cocaine and marijuana in his urine, but "was not currently

under the influence" of the drugs because they had already been filtered by the kidneys. (Tr. at 225.) He also acknowledged that the alcohol concentrations were .24 in the urine and .16 in the blood.

[14] Martinez claims that his trial counsel performed deficiently when he introduced into evidence the defense deposition of Cheryl Sladovnik (a/k/a "Cherry") in lieu of her live testimony. According to Martinez, he had a "right to look the witness in the eye" and the jury should have been provided with the "opportunity to gauge whether or not she was being truthful." (Appellant's Br. at 23.)

[15] Although Sladovnik had been subpoenaed and the trial court had verbally explained her obligation to appear in court, she failed to appear and provide in-court testimony at Martinez's trial. A bench warrant was issued for her arrest, and she was declared an unavailable witness. Defense counsel, who had conducted a pre-trial deposition, requested that Sladovnik's (redacted) deposition testimony be read into evidence. Although Martinez now complains that the procedure deprived him of the full exercise of his rights of confrontation, Martinez does not now identify what additional relevant evidence might have been elicited upon further questioning. He merely implies – without citation to supporting authority – that his right of confrontation could not be exercised by counsel but could only be satisfied by a personal face-to-face encounter between himself and a witness.

[16] Nor does Martinez describe any prejudice ensuing from the admission of the redacted deposition testimony. In her deposition, Sladovnik testified that she had been conversing with Martinez prior to the shooting, but she left. According to Sladovnik, the victim had been holding a bottle of tequila, he was intoxicated, and he liked to "talk crack" or threaten to get his friends to assist him. (Tr. at 410.) In other words, Sladovnik offered corroboration that the victim was belligerent and confrontational, tending to support Martinez's claim of fearfulness.

[17] Finally, Martinez argues that he is entitled to a new trial because of cumulative deficiencies on the part of trial counsel. Our review of counsel's performance leads to the conclusion that the jury's rejection of the self-defense theory was not due to an inadequacy on the part of counsel. Trial counsel was placed in a very difficult position by Martinez's admission that he remained at a distance from Valazques-Ruiz, but was eventually compelled to shoot him because of threats presented by the victim and his machete or knife-wielding friends. The trial witnesses and the physical evidence did not support that version of events. No weapon was recovered from the victim, who had endured multiple gunshots: one a contact shot to the abdomen and a second to the shoulder. No witness indicated that any person other than Martinez had been armed.

[18] Trial counsel attempted to have Martinez's statement excluded. When that strategy was unsuccessful, he elicited evidence that the victim had been drunken, intimidating, and aggressive. Trial counsel's efforts and strategy, although they did not ultimately achieve the result desired by Martinez, were

not so unreasonable as to constitute ineffective assistance of counsel. *See Badelle v. State*, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), *trans. denied.*

## *Effectiveness of Appellate Counsel*

[19] A defendant is entitled to the effective assistance of appellate counsel. *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002). The two-pronged standard for evaluating the assistance of trial counsel first enunciated in *Strickland* is applicable to appellate counsel ineffective assistance claims. *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997). There are three basic categories of alleged appellate ineffectiveness: (1) denying access to an appeal, (2) waiver of issues, and (3) failure to present issues well. *Id.* at 193-95. Here, the second category is implicated, as Martinez argues that appellate counsel failed to raise two obvious issues: Martinez's absence at a critical stage of trial and the shortcomings of the discovery deposition.

[20] The decision of what issue or issues to raise on appeal is one of the most important strategic decisions to be made by appellate counsel. *Id.* at 193. Ineffectiveness is rarely found when the issue is the failure to raise a claim on direct appeal. *Id.* The petitioner must show from the information available in the trial record or otherwise known to appellate counsel that counsel failed to

present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *Stevens v. State*, 770 N.E.2d at 760.

[21] Martinez suggests that appellate counsel should have claimed fundamental error occurred because Martinez was absent from the courtroom for a bathroom break at a critical stage of the trial. The brief discussion between counsel and the trial court regarding the possible proffer of a lesser-included offense instruction took place during the bathroom break. Then, as now, Martinez was lacking the evidentiary support for such an instruction. We do not agree with Martinez that his absence amounts to a denial of due process, much less fundamental error that should have been raised on appeal.[3] *See United States v. Gagnon*, 470 U.S. 522, 526 (1985) (clarifying that "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.")

[22] Additionally, Martinez contends that his appellate counsel should have claimed that the admission of Sladovnik's deposition deprived Martinez of his right of confrontation. As previously observed, Sladovnik was unavailable at trial, she had been deposed by defense counsel, and no omitted question was later identified. Martinez has not shown that appellate counsel omitted a significant and obvious issue.

---

[3] Fundamental error is that which is a clear and blatant violation of basic and elementary principles that would deny a defendant fundamental due process if left uncorrected. *Cain v. State*, 955 N.E.2d 714, 721 (Ind. 2011).

# Conclusion

[23]     Martinez was not denied the effective assistance of trial or appellate counsel.

The post-conviction court properly denied the petition for post-conviction relief.

[24]     Affirmed.

Vaidik, C.J., and Crone, J., concur.