## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 14 2016, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jasmine Sivels,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 14, 2016<br><br>Court of Appeals Case No.<br>49A05-1602-CR-323<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Ronnie Huerta, Commissioner<br><br>Trial Court Cause No.<br>49G19-1509-CM-33756 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Jasmine Sivels was found guilty of battery resulting in bodily injury, a Class A misdemeanor. Sivels raises one issue for our review: whether the State presented sufficient evidence to rebut Sivels' claim of self-defense. Concluding the State presented sufficient evidence to rebut Sivels' assertion that she acted in self-defense, we affirm her conviction.

# Facts and Procedural History

[2] On August 24, 2015, Sivels and five of her friends cut through a side yard at the duplex where Sivels and her mother lived. Christine and April Mathews lived next door to Sivels in the duplex. Sivels and her mother had an ongoing dispute with Christine and April regarding access to the side yard, which was located on the Mathewses' side of the house. The Mathewses expressed concern that they walked their dog in the side yard, and they did not want the dog eating trash or other items dropped in the yard. In addition, the dog was large and they did not want anyone to surprise them when they had the dog out. At one time, the Mathewses posted a no trespassing sign in the yard but it disappeared during the night.

[3] On the day in question, Christine and April saw Sivels and her friends cutting through the side yard. Christine confronted the group, declaring they were not allowed in the yard. Sivels replied that she had lived at the house for five years and "goes where she wants." Transcript at 10. When Christine reiterated her

concerns for the dog, Sivels threatened to shoot both Christine and the dog. Next, Sivels went to a nearby car, opened the door, and patted the seat, which Christine believed "insinuate[d] that there was a gun." *Id.* at 12. As the argument progressed, Christine and April decided to return to their house, turning their backs to Sivels and her friends. Sivels and her friends then attacked the Mathewses from behind.

[4] While the physical altercation ignited and ended quickly, April received punches to the back of the head and kidney area. April's attackers swung her around by her hair, and she saw a boy with a gun while Christine was lying on the ground. Christine recalled multiple attackers striking her ears and jaw before she lost consciousness. Assuming the fetal position to deflect the kicks and punches, Christine was unsure of who hit her. Neighbors quickly intervened by threatening to call police if the attackers did not stop. One neighbor, Redeena McKamey, testified that she observed Sivels strike April approximately four or five times in the face, arms, and head. After the attack, the Mathewses went to the hospital to receive treatment for their injuries. Both Christine and April missed three days of work following the event. In the days following the incident, the Mathewses saw Sivels who, while making boxing motions, asked if the Mathewses "wanted [their] a** beat again." *Id.* at 35.

[5] The State charged Sivels with two counts of battery resulting in bodily injury, both Class A misdemeanors, Count I for battery against Christine and Count II for battery against April. Sivels moved for a Trial Rule 41(B) involuntary dismissal of both counts following the State's case-in-chief. The trial court

dismissed Count I for acts against Christine because Christine was unable to identify who attacked her and McKamey did not specifically observe Sivels strike Christine. As to Count II, Sivels testified that she warned her friends to avoid the Mathewses' yard. According to Sivels, April first addressed the group with provoking language, and Sivels informed her friends, "I just got on my probation and I need you all to stop." *Id.* at 115. Instead, one of Sivels' friends swung at Christine. Sivels claimed she attempted to break up the fight to no avail, receiving punches and blows herself as a result of her efforts. Sivels claimed she never touched the Mathewses. The trial court found Sivels guilty of battery resulting in bodily injury to April. Sivels now appeals her conviction.

# Discussion and Decision

## I. Standard of Review

[6] Sivels argues she acted in self-defense throughout the incident with the Mathewses. When a claim of self-defense is presented, the State assumes the burden of negating of at least one of the necessary elements. *McEwen v. State*, 695 N.E.2d 79, 90 (Ind. 1998). In the event the defendant is convicted despite asserting a claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Wilson v. State*, 770 N.E.2d 799, 800-01 (Ind. 2002). "The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim." *Id.* at 801. "We neither reweigh the evidence nor judge the credibility of witnesses. If

there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed." *Id.* (internal citation omitted).

## II.  Sufficiency of the Evidence

[7]  "A valid claim of self-defense is legal justification for an otherwise criminal act." *Cole v. State*, 28 N.E.3d 1126, 1137 (Ind. Ct. App. 2015).  Self-defense is defined by statute in Indiana: "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."  Ind. Code § 35-41-3-2(c).  In order to prevail on a self-defense claim, a defendant must establish that she (1) was in a place where she had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm.  *Wilson*, 770 N.E.2d at 800.

[8]  As to the first element, the Mathewses had asked Sivels and her mother to stay out of the side yard in the past, and on the day of the fight, the Mathewses informed Sivels and her friends they did not have permission to enter the yard. The yard was on the Mathewses' side of the duplex and a no trespassing sign had previously been posted in the yard.  Clearly, the Mathewses thought they had the right to exclude people from the side yard.  Just as clearly, Sivels thought she had the right to use the side yard.  Sivels and the Mathewses rented units in a single building and there was no evidence regarding whether the yard was in fact a common area.  It is therefore not entirely clear whether Sivels had

a right to occupy the side yard. Regardless, the defendant must establish all three elements of a self-defense claim. If the State's evidence rebutted either of the remaining two elements, Sivels' self-defense claim fails.

[9] With regard to the second element—whether Sivels provoked, instigated, or participated willingly in the fight—the evidence supports the conclusion Sivels did not act without fault. Sivels and her friends cut through the yard despite knowing such an act could incite a response from the Mathewses, and Sivels argued with the Mathewses saying she would go where she wanted. In response to a request she stay out of the side yard, Sivels threatened to shoot both the Mathewses and their dog, and her following actions implied she had a gun at her disposal. While it is not clear who in Sivels' group first assaulted the Mathewses, Sivels' actions provoked the confrontation. Moreover, Sivels acted as a willing participant in the fight by punching April multiple times. *See Cole*, 28 N.E.3d at 1137 (holding a defendant's self-defense claim failed when evidence showed he instigated the fight by first verbally attacking the victim and putting his hands on the victim to pin him against a counter and then, after the victim pushed him away and said he did not want to fight, willingly escalated the aggression by grabbing the victim by the neck). Sivels' repeated physical attacks against April demonstrate she intended to engage in the fight. Sivels' statements in the days following the fight, implying she wished to cause further injury, bolster the conclusion Sivels willingly participated in the aggressive acts.

[10] Finally, Sivels' acts against the Mathewses were unreasonable. "Where a person has used more force than is reasonably necessary to repel an attack, the

right of self-defense is extinguished, and the ultimate result is that the intended victim then becomes the perpetrator." *Geralds v. State*, 647 N.E.2d 369, 373 (Ind. Ct. App. 1995), *trans. denied*. Even if Sivels had a justifiable reason to defend herself, Sivels had to respond with an amount of force proportional to the urgency of the situation. *Id*. Up until the time the Mathewses turned their backs to Sivels' group, the parties displayed only verbal aggression. Using physical force in response to the Mathewses' verbal hostility cannot be described as reasonable. During the fight, both Christine and April lay on the ground, attempting to deflect the blows. McKamey observed Sivels strike April multiple times on her face and body. Sivels actions cannot be reasonably characterized as defensive when the Mathewses assumed the fetal position to escape the attack. *See Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999) (noting that although defendant was in a place he had a right to be and was not the first aggressor, his self-defense claim was defeated by evidence he retaliated for a punch in the face by stabbing the victim in the side and chasing the retreating victim). The Mathewses had turned away from Sivels and her friends when Sivels attacked April. The Mathewses did not present a physical threat to Sivels or her friends that justified their response.

[11] Sivels argues her actions were misperceived and therefore reasonable because she attempted to prevent the fight, not instigate it. For example, she argues that because McKamey was standing an undisclosed distance away from the skirmish, she may have improperly interpreted Sivels' actions as aggressive rather than defensive. Such an argument, however, invites us to reevaluate the

credibility of the witnesses in this case, which we will not do. *See Wilson*, 770 N.E.2d at 801.

# Conclusion

[12] The State presented sufficient evidence to rebut Sivels' claim that she acted in self-defense, and we therefore affirm Sivels' conviction for battery.

[13] Affirmed.

Mathias, J., and Brown, J., concur.